UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DIMAIO FAMILY PIZZA & LUNCHEONETTE, INC. and ANTHONY A. DIMAIO, <br><br> Plaintiffs, <br><br> v. <br><br> THE CHARTER OAK FIRE INSURANCE COMPANY, <br><br> Defendant. | Civil Action No. 04-30046-KPN |

DEFENDANT THE CHARTER OAK FIRE INSURANCE COMPANY'S
MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION FOR SUMMARY JUDGMENT</u>

The defendant, The Charter Oak Fire Insurance Company ("Charter Oak"), pursuant to Fed. Civ. P. 56 and Local Rule of the United States District Court For the District of Massachusetts 7.1 and 56.1, submits this memorandum of law demonstrating the reasons why it is entitled to judgment as a matter of law on all counts in the complaint.

I.     PRELIMINARY STATEMENT

The plaintiffs' claims here fail because they did not timely commence this action. The plaintiffs allege that Charter Oak improperly failed to pay them insurance proceeds for loss caused by a fire at their restaurant. The Policy provides that no suit "for the recovery of any claim by virtue of this policy shall be sustained in any court of law or equity in this commonwealth unless commenced within two years from the time of loss." (*See* Affidavit of David Reed ("Reed Aff.") at ¶ 4 & **Tab 1** thereto). The loss for which the plaintiffs seek recovery is a fire at their pizza business that took place on December 18, 2000.

Prior to the expiration of the two-year suit limitation on December 18, 2002, the bankruptcy trustees for the plaintiffs' respective bankruptcy estates requested, and Charter Oak agreed to, an extension of the time to commence an action until February 17, 2003. Charter Oak subsequently, again at the request of the bankruptcy trustees, extended the deadline for suit until April 11, 2003. That date came and went without any action being commenced. Neither the plaintiffs nor anyone on their behalves commenced any action for recovery under the policy until February 12, 2004 - more than three years after the loss, and more than ten (10) months after the extension of the suit limitation expired on April 11, 2003.

The two-year suit limitation is a valid and enforceable provision in the Policy. In fact, the Commonwealth of Massachusetts requires that Charter Oak (and all other issuers of fire insurance) include the suit limitation in the Policy.[1] The plaintiffs failed to commence a timely action under the Policy and controlling Massachusetts law, and Charter Oak is entitled to judgment as a matter of law.

## II.   STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.   Insurance Policy

Charter Oak issued policy number I-660-575X1693-COF-00 ("the Policy"), effective February 18, 2000 to February 18, 2001, to the Villa DiMaio Restaurant. (Reed Aff. at ¶ 3). The Policy provides, subject to its terms, certain property insurance coverage for loss or damage caused by fire. (*Id.*).[2]

---

[1] *See* M.G.L. ch. 175. § 99 (requiring that all fire insurance policies issued in the Commonwealth contain a two-year suit-limitation).

[2] The two plaintiffs in this case claim rights under the Policy even though their names do not appear on the Policy. The fact that the plaintiffs in this case are not identified as insureds on the Policy is immaterial for the resolution of the instant motion because, even if they were insureds, their failure to comply with the suit-limitation provision in the Policy would bar any relief. Charter Oak specifically reserves its rights, and does not waive or relinquish any rights, to pursue all defenses relating to the fact that the Policy does not identify the plaintiffs as insureds.

The Policy requires that any action for recovery under the Policy be commenced within two years of the loss. (*Id.* at ¶ 4 & **Tab 1** thereto). In pertinent part, the Policy provides in the Massachussetts Change endorsement:

Standard Fire Policy Provisions

**Suit.** No suit or action against this company for the recovery of any claim by virtue of this policy shall be sustained in any court of law or equity in this commonwealth unless commenced within two years from the time the loss occurred: provided, however, that if, within said two years, in accordance with the provisions of the preceding paragraph, the amount of the loss shall have been referred to arbitration after failure of the parties to agree thereon, the limitation of time for bringing suit shall in no event be less than ninety days after a valid award has been made upon such reference or after such reference or award has been expressly waived by the parties. If suit or action upon this policy is enjoined or abated, suit or action may be commenced at any time within one year after the dissolution of such injunction, or the abatement of such suit or action, to the same extent as would be possible if there was no limitation of time provided herein for the bringing of such suit or action.

(*Id.*).

### B.  December 18, 2000 Fire at Plaintiffs' Restaurant

The plaintiffs operated a restaurant business at 268 State Road, Whately, Massachusetts. (*Id.* at ¶ 5). On or about December 18, 2000, the restaurant sustained damage from a fire. (*Id.* at ¶ 6). On or about December 20, 2000, the plaintiffs presented a notice of loss under the Policy seeking the payment of insurance proceeds for the loss caused by the fire. (*Id.*). David Reed was the person assigned to handle the plaintiffs' claim on behalf of Charter Oak, and he worked with the plaintiffs and their representatives throughout the claim process. (*Id.*). In response to the claim presented, David Reed wrote to Anthony DiMaio and advised that the claim was being investigated and that all rights and defenses under the Policy were being reserved. (*Id.* at ¶ 7 & **Tab 2** thereto).

Anthony DiMaio retained Fredi Ann Goldman, Esq. as legal counsel in connection with the insurance claim on or about April 27, 2001. (*Id.* at ¶ 8 & **Tab 3** thereto).

### C.   Plaintiffs' Bankruptcy Proceedings

Prior to the December 18, 2000 fire, Villa DiMaio Family Pizza, Inc. had filed a petition for bankruptcy. (*Id.* at ¶ 12). Villa DiMaio Family Pizza, Inc. was represented by Attorney Peter M. Stern of Springfield, Massachusetts as counsel in the bankruptcy proceeding. (*Id.* at ¶ 13). One year after the fire, on December 18, 2001, Anthony A. DiMaio filed a bankruptcy petition. (*Id.* at ¶ 9). Attorney Peter M. Stern also served as counsel to Mr. DiMaio in his bankruptcy proceeding. (*Id.* at ¶ 10).

In both bankruptcy proceedings, the court appointed trustees for the respective bankruptcy estates: (1) David W. Ostrander for the estate of Villa DiMaio Family Pizza, Inc.; (2) Joseph B. Collins for the estate of Anthony A. DiMaio. (*Id.* at ¶¶ 11 & 14). Both trustees sought and obtained approval from the bankruptcy court to retain legal counsel, among other purposes, to commence legal actions to protect the legal claims of the estates. (Affidavit of Lori A. Gizzi ("Gizzi Aff.") at ¶ 5 & 6, & **Tab 2-3, 7-8** thereto).

On April 2, 2003, the bankruptcy court ordered the trustee for the estate of Villa DiMaio Family Pizza, Inc. to abandon any interest in the insurance proceeds relative to loss caused by the December 18, 2000 fire. (*Id.* at ¶ 5 & **Tab 5** thereto). Shortly thereafter on June 20, 2003, the bankruptcy court ordered the trustee for the estate of Anthony A. DiMaio to abandon any interest in the insurance proceeds relative to loss caused by the fire.[3] (*Id.* at ¶ 6 & **Tab 11** thereto). On March 16, 2004, the bankruptcy court closed Villa DiMaio Family Pizza, Inc.'s bankruptcy case, and discharged the trustee. (*Id.* at ¶ 5 & **Tab 6** thereto). On March 30, 2004, the bankruptcy

---

[3] As the plaintiffs are aware, Charter Oak paid the plaintiffs' creditors over $335,000 for the loss from the fire. It remains Charter Oak's position that, in addition to the suit-limitation defense, the plaintiffs are not owed any additional payment under the Policy because all amounts payable were actually paid. (*See* Answer at 4th Aff. Def.). The instant motion is not an exhaustive statement of Charter Oak's defenses to the plaintiffs' claims, and Charter Oak specifically reserves all rights to, and does not waive or relinquish, any defense available to it, including without limitation, those defenses not addressed in the instant motion.

court also closed Anthony A. DiMaio's bankruptcy case, and discharged the trustee. (*Id.* at ¶ 6 & **Tab 12** thereto).

### D.     Extension of Suit Limitation Until April 11, 2003

At the request of the two bankruptcy trustees, on December 16, 2002, Charter Oak extended the suit limitation in the Policy to allow the bankruptcy estates of the plaintiffs until February 17, 2003 to commence an action for recovery under the Policy. (Reed Aff. at ¶ 15). Had the suit limitation not been extended, the time to commence such an action would have expired on December 18, 2002, the second anniversary of the fire. (*Id.*). Again at the request of the bankruptcy trustees, Travelers subsequently lengthened the extension of time for the bankruptcy estates to commence an action for recovery under the Policy until April 11, 2003. (*Id.* at ¶ 16). Neither the plaintiffs nor the bankruptcy trustees ever sought or received any further extension of the suit limitation under the Policy, beyond April 11, 2003. (*Id.* at ¶ 18). In fact, the plaintiffs themselves never requested or received any extension of the suit limitation for commencing action for recovery under the Policy. (*Id.* at ¶ 17).

### E.     Plaintiffs Commence Untimely Action on February 12, 2004

Neither the plaintiffs nor anyone on their behalves filed an action for recovery under the Policy until February 12, 2004, a date which is over ten (10) months after the extension of the suit limitation had expired on April 11, 2003. (*Id.* at ¶ 19).

In the complaint, the plaintiffs allege six (6) claims for relief. Counts I and II seek relief for an alleged breach of the Policy through Charter Oak's failing to pay the plaintiffs' claim (breach of contract). (Compl. at ¶¶ 16-25). In Count III, the plaintiffs allege that Charter Oak is (somehow) estopped from denying that the loss is payable under the Policy. (*Id.* at ¶¶ 26-28). Nowhere in the complaint, however, do the plaintiffs identify the representation or conduct on

5

which they rely for the estoppel claim - what Charter Oak did, said or wrote that now prevents it from relying on the suit limitation (or any other provision in the Policy). (*See id.* at *passim*). Similarly in Count IV, the plaintiffs allege that Charter Oak has waived its right to deny the plaintiffs' claim under the Policy, again with no identification of how the alleged waiver took place. (*See id.* at ¶ 29-31). Finally, in Counts V and VI, the plaintiffs allege that Charter Oaks' failure to pay the claim under the Policy constitutes a breach of the implied covenant of good faith and fair dealing, and a violation of M.G.L. ch. 93A, §§ 2 and 11. (*Id.* at ¶¶ 32-41).

Despite the various theories of liability, a *sine qua non* for each of the plaintiffs' claims for relief is that Charter Oak has a currently enforceable obligation to pay insurance proceeds under the Policy. (*See id.* at *passim*).

### III. ARGUMENT

#### A. Standard for Granting Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that a party is entitled to Summary Judgment if "there is no genuine issue as to any material fact and... the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether Summary Judgment should be granted, the United States Supreme Court has explained that:

> there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party... If the evidence is merely colorable... or is not significantly probative... summary judgment may be granted.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (citations omitted). In essence, the inquiry is "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

The "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (citations omitted).

### B. The suit-limitation provision is a legislatively-mandated provision in the Policy, which entitles Charter Oak to judgment as a matter of law.

All fire insurance policies written in Massachusetts must conform to the standard form set forth in M.G.L. ch. 175, § 99, which states, "No company shall issue policies or contracts which...insure against loss or damage by fire...to property or interests in the commonwealth, other than those of the standard forms herein set forth." M.G.L. ch. 175, § 99 provides in pertinent part:

> No suit or action against this company for the recovery of any claim by virtue of this policy shall be sustained in any court of law or equity in this commonwealth unless commenced within two years from the time the loss occurred; provided, however, that if, within said two years, in accordance with the provisions of the preceding paragraph, the amount of the loss shall have been referred to arbitration after failure of the parties to agree thereon, the limitation of time for bringing such suit or action shall in no event be less than ninety days after a valid award has been made upon such reference or after such reference or award has been expressly waived by the parties. If suit or action upon this policy is enjoined or abated, suit or action may be commenced at any time within one year after the dissolution of such injunction, or the abatement of such suit or action, to the same extent as would be possible if there was no limitation of time provided herein for the bringing of such suit or action.

This exact language is contained in the Policy. (*See* Reed Aff. at ¶ 4 & **Tab 1** thereto). As the language of the Policy and the statute are identical, it is beyond question that the suit limitation is a valid and enforceable provision.

7

Massachusetts state and federal courts have consistently granted insurers summary judgment based on the suit limitation when insureds (under fire insurance policies) bring suit more than two years after the loss. *See e.g., Rock of Salvation Pentecostal Church, Inc. v. Guideone Ins. Co.*, 2004 Mass. Super. LEXIS 87, *14 (Mass. Super. Ct. Feb. 27, 2004); *see also J.&T. Enters., Inc. v. Liberty Mut. Ins. Co.*, 384 Mass. 586, 587-90, 428 N.E.2d 131 (1981) (barring suit brought more than two years after insured's property was damaged by fire); *Sherman v. New Hampshire Ins. Co.*, 1983 U.S. Dist. LEXIS 17093, *4 (D.Mass. May 9, 1983). Dispositive of the instant motion, the Massachusetts Supreme Court held that M.G.L. ch. 175, § 99 "states broadly that no action for recovery of any claim by virtue of the policy shall be sustained unless brought within two years from the time the loss occurred." *J.&T. Enters., Inc.*, 428 N.E. 2d at 132-4.

In assessing a motion for summary judgment under an insurance policy's suit-limitation provision, "the key issues before the court are (1) when the 'loss occurred' and (2) when the plaintiff filed suit." *Rock of Salvation Pentecostal Church, Inc.*, 2004 Mass. Super. LEXIS at *12. In the instant case, the loss took place on December 18, 2000, thereby requiring an action to be commenced, if at all, on or before December 18, 2002. At the request of the trustees of the plaintiffs' respective bankruptcy estates, Charter Oak extended the suit limitation until April 11, 2003. (Reed Aff. at ¶ 15). April 11, 2003 came and went, but neither the plaintiffs themselves nor the trustees commenced an action on or before that date. (*Id.* at ¶ 19). Neither the plaintiffs themselves nor the trustees sought or obtained any extension of the suit limitation beyond April 11, 2003. The only action ever commenced for recovery under the Policy was the instant action, which was filed on February 12, 2004, over ten (10) months after the last extension expired.

1. ***The bankruptcy trustees were actually aware of the suit limitation yet failed to commence a timely action for recovery under the Policy.***

Since the plaintiffs had filed for bankruptcy, the right to recover insurance proceeds from Charter Oak for loss caused by the fire became the property of the bankruptcy estates and any rights under the Policy passed to the trustees. *See* 11 U.S.C. § 541(a). Pursuant to 11 U.S.C. § 323(b), a bankruptcy trustee has the capacity to sue on behalf of an estate. In fact, the trustees for the plaintiffs' bankruptcy estates were specifically aware of their ability and responsibility to commence a timely action: (1) they sought and received an extension of the suit limitation from Charter Oak; and (2) sought and obtained approval from the bankruptcy court to engage counsel, among other things, to commence legal actions to protect the claims of the estate. (*See* Gizzi Aff. at ¶ 5 & **Tabs 2-3** thereto (Trustee for Villa DiMaio Family Pizza, Inc. obtaining approval from bankruptcy court to retain counsel), ¶ 6 & **Tabs 8-9** thereto (Trustee for Anthony A. DiMaio obtaining same approval)). Despite the trustees' specific awareness of the suit limitation, and having been granted an extension by Charter Oak to commence suit, each trustee failed to commence a timely action (or untimely action).[4]

It is important to note that in addition to the trustees' interest in protecting any claim to insurance proceeds, the plaintiffs were represented by legal counsel (Fredi Ann Goldman and Peter M. Stern) during the entire pendency of the bankruptcy cases – both before and after the expiration of the suit limitation. (*See* Reed Aff. ¶¶ 8, 10, 13).

2. ***Since there was no timely suit to enjoin or abate, it is axiomatic that such a suit or action was not enjoined or abated.***

The plaintiffs have erroneously contended that automatic stay in their respective bankruptcies somehow qualifies as an abatement or injunction with the meaning of the

---

[4] While the trustees are the ones to explain why no suit was commenced, the trustees' decision not to commence suit is wholly consistent with Charter Oak's position that the payments to the plaintiffs' creditors fully discharged Charter Oak's liability under the Policy for the fire loss.

injunction-or-abatement provision in Policy's suit limitation. The language of the suit-limitation provision does not support this contention. The Policy (and M.G.L. ch. 175, § 99) provides that:

> If suit or action upon this policy is enjoined or abated, suit or action may be commenced at any time within one year after the <u>dissolution of such injunction, or the abatement of such suit or action</u>, to the same extent as would be possible if there was no limitation of time provided herein for the bringing of such suit or action.

(Reed Aff. at ¶ 4 & **Tab 1** thereto (emphasis added)). The plain language of the injunction-or-abatement provision requires that a suit or action first exist, and then be enjoined or abated. *C.f., United States v. Raphelson*, 802 F.2d 588, 593 (1st Cir. 1986)(applying injunction-or-abatement provision to save untimely suit when prior timely suit had been dismissed and the untimely suit was filed within one year of the dismissal). Because there never was a timely suit or action under the Policy, there was no suit or action to enjoin or abate.

Because the fact that was no suit to enjoin or abate is unavoidable, the plaintiffs may argue that the injunction-or-abatement provision also applies where the *commencement* of suit was enjoined or abated, namely that the bankruptcy proceedings "enjoined" or "abated" the plaintiffs' ability to commence suit because the right to collect insurance proceeds became the property of the bankruptcy estates. While it is clear that because the plaintiffs sought to insulate themselves from creditors through bankruptcy their right to receive insurance proceeds became part of the respective bankruptcy estates, it is equally clear that there never was any injunction, abatement or restriction of any kind on the trustees' ability to commence an action under the Policy. The trustees had the authority (and were aware of it) to commence an action, the trustees simply did not. There never was any restriction, much less an injunction or abatement, limiting the trustees' ability to bring suit under the Policy.

10

In addition, it would be highly irregular to allow the plaintiffs to take the advantages of bankruptcy, *i.e.*, discharging past debts, while avoiding the disadvantages of filing bankruptcy – losing control over the assets in the bankruptcy estate.

**C.  The plaintiffs' claims alleging estoppel, waiver, bad faith and 93A violations fail as a matter of law.**

In order to succeed on a theory of estoppel, the plaintiffs must demonstrate that they relied to their detriment on a representation by Charter Oak that it would not rely on the suit limitation.[5] *See Lumbermens Mut. Casualty Co. v. Offices Unlimited*, 419 Mass. 462, 468, 645 N.E.2d 1165, 1169 (1995)(citations omitted). No reasonable fact finder could conclude that the plaintiffs relied on any alleged forbearance of the suit-limitation defense by Charter Oak. In fact, the trustees (the holders of the alleged right to receive insurance proceeds) sought and obtained specific extensions of the suit limitation, actions that are directly inconsistent with any reasonable belief that the suit limitation had been forborne. Under the undisputed facts, it was clear to the plaintiffs and the trustees – who were represented by counsel at all relevant times – that Charter Oak never intended to read the suit limitation out of the Policy. The incontrovertible facts establish that Charter Oak acted in conformity with an intention to enforce the suit limitation, if necessary, and, therefore, Count III (Estoppel) fails as a matter of law.

Similarly, Charter Oak never waived any rights under the Policy, and in fact reserved its right under the Policy from the very beginning of the claim presentation process. (*See* Reed Aff. at ¶ 7 & **Tab 2** thereto). The purpose of reserving the right to disclaim coverage is to permit an insurer to evaluate a claim without forfeiting any subsequent right to disclaim. *See Merrimack*

---

[5] Charter Oak is not identifying here an exhaustive list of the deficiencies in the claims for relief alleged by the plaintiffs, and specifically reserves all rights, and does not waive or relinquish any right, to defenses not stated herein.

*Mut. Fire Ins. Co. v. Nonaka*, 414 Mass. 187, 192, 606 N.E.2d 904, 907 (1993). No reasonable fact finder could conclude that Charter Oak waived its right to rely on the suit limitation – the bankruptcy trustees were specifically aware of the suit-limitation defense and its viability, and sought and obtained an extension of the suit limitation.

In addition, the Policy (and M.G.L. ch. 175, § 99) prevents the waiver of any provision of the Policy unless it is done in writing and attached to the Policy itself. (Reed Aff. at ¶ 4 & **Tab 1** thereto ("No permission affecting this insurance shall exist, or waiver of any provision be valid unless granted herein or expressed in writing added hereto.")). No written waiver agreement was ever made, or even alleged in the complaint. In any event, as the Supreme Judicial Court has repeatedly observed, "whatever may be the scope of waiver in the law of insurance, it does not extend to the broadening of the coverage, so as to make the policy cover a risk not within its terms." *See Merrimack Mut; Fire Ins. Co.*, 606 N.E.2d at 907 (citing multiple cases for the proposition). Consequently, even assuming *arguendo* that an unwritten waiver is a legal possibility under the Policy (even though it would be in direct violation of the Massachusetts statute governing fire insurance policies), any such waiver would not make the loss payable, *i.e.*, broaden coverage.

As demonstrated above, the suit-limitation defense is a complete defense to payment under the Policy. But even assuming *arguendo* that it were not a complete defense, the suit-limitation defense is at minimum a plausible legal basis for denying payment and, therefore, prevents recovery on any claim for bad faith or 93A violations. "An insurance company which in good faith denies a claim of coverage on the basis of a plausible interpretation of its insurance policy cannot ordinarily be said to have committed a violation of G. L. c. 93A." *Lumbermens Mut. Casualty Co.*, 645 N.E.2d at 1169 (citations omitted).

Case 3:04-cv-30046-KPN    Document 15    Filed 07/09/2004    Page 13 of 13


## IV. CONCLUSION

Charter Oak's position is uncomplicated. Because the plaintiffs failed to comply with the suit limitation contained in the Policy, the instant action is time-barred and Charter Oak is entitled to judgment as a matter of law on all counts in the complaint.

Dated: July 9, 2004

DEFENDANT,
THE CHARTER OAK FIRE INSURANCE
COMPANY

By: *[signature]*
Gerald P. Dwyer, Jr., BBO# 631475
Wystan M. Ackerman, BBO #651086
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103
Tel.: (860) 275-8200
Fax: (860) 275-8299
E-mail: gdwyer@rc.com
E-mail: wackerman@rc.com