UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **DIMAIO FAMILY PIZZA & LUNCHEONETTE, INC.** and **ANTHONY A. DIMAIO,** | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 04-30046-KPN |
| v. | ) ) ) | |
| **THE CHARTER OAK FIRE INSURANCE COMPANY,** | ) ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT THE CHARTER OAK FIRE
INSURANCE COMPANY'S REPLY MEMORANDUM IN
FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

The failure of Plaintiffs or the representatives of their bankruptcy estates to file suit within the two-year period prescribed by statutorily-mandated policy language (and agreed-upon extensions thereto) is not excused by the bankruptcy filings or by the $20,000 advance payment made by Charter Oak for debris removal costs incurred by the Town of Whately[1]:

- "Enjoined or Abated" Clause: Plaintiffs' voluntary bankruptcy filings did not have the effect of enjoining suit. The bankruptcies only changed the real party in interest to the trustees of the bankruptcy estates, who had the power to bring suit and chose not to do so. The "enjoined or abated" clause in Massachusetts' standard fire insurance policy was enacted in 1916 to allow an insured additional time to bring suit where suit has previously been brought and a referees' award has been invalidated or where suit otherwise failed on technical grounds without reaching the merits. It is inapplicable here.

- M.G.L. c. 231, § 140B: Section 140B requires liability insurers to advise third-party claimants of the applicable statute of limitations when making an advance payment to the third party on a claim made against the insured. The statute is plainly inapplicable to first-party property insurers' dealings with their own insureds. Since its enactment

---

[1] All defined terms used herein are used in the same manner as in Charter Oak's opening memorandum of law on this motion.

in 1971, § 140B has never been cited in a case involving first-party insurance coverage.[2]

As to Plaintiffs' claim under Chapters 93A and 176D, it is well-established under Massachusetts law that where an insurer's denial of coverage is correct (or at least based on a reasonably plausible interpretation of the Policy) there can be no violation of Chapters 93A and 176D as a matter of law. Charter Oak's denial of coverage based on the suit limitation period was proper (or at least plausible).

1.  **Suit Or Action On The Policy Was Not Enjoined Or Abated By Plaintiffs' Bankruptcies**

Plaintiffs' contention that their filing of voluntary bankruptcy petitions "operated to enjoin their claims" under the Policy is incorrect. The bankruptcy trustees undisputedly had the capacity to bring suit under the Policy during the pendency of the bankruptcy if they deemed appropriate. See 11 U.S.C. § 323 (providing that "[t]he trustee . . . is the representative of the estate" and "has capacity to sue"). The trustees, however, were ultimately ordered to abandon the insurance proceeds on unopposed or assented-to motions of one of the Plaintiff's creditors. (Gizzi Aff., ¶¶ 5, 6 and **Tabs 5, 11** thereto; Reed Aff., ¶¶ 15-19.) Charter Oak made payment to the creditors and no one brought suit within the limitations period.

**Plaintiffs' Voluntary Bankruptcies Did Not Have The Effect Of Extending The Limitations Period For Plaintiffs To Bring Suit.** Federal law -- Section 108(a) of the Bankruptcy Code -- governs extensions of limitations periods as a result of a bankruptcy. It extends the limitation period for bankruptcy <u>trustees</u> to bring suit, as follows:

---

[2] Third-party liability insurance provides defense and indemnity coverage for claims made or suits brought by third-parties against an insured. First-party property insurance, in contrast, covers certain losses suffered by the insured resulting from damage to the insured's own property. As many courts have noted, "there are substantial analytical differences between first party property policies and third party liability policies." <u>Prudential-LMI Commercial Ins. v. Superior Court</u>, 798 P.2d 1230, 1232 (Cal. 1990).

2

> If . . . an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the <u>trustee</u> may commence such action only before the later of --
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
> (2) <u>two years after the order for relief</u>.

11 U.S.C. § 108(a) (emphasis added).  The trustees thus had until the end of the Policy's suit limitation period or two years after the filing of the respective bankruptcy petitions, whichever was longer, to bring suit under the Policy.[3]  However, courts have held that § 108(a) does <u>not</u> extend the time for the insured to bring suit where, as here, the trustee elects not to do so.  For example, in <u>Natco Indus., Inc. v. Fed. Ins. Co.</u>, 69 B.R. 418 (S.D.N.Y. 1987) (Sand, J.), the court dismissed a debtor's claim under an insurance policy brought after conclusion of bankruptcy proceedings as time-barred, holding that "debtors are barred from invoking section 108 . . . ." <u>Id.</u> at 419-20 (collecting cases reaching same result).  See also <u>United States v. C.I.T. Constr., Inc.</u>, 944 F.2d 253, 260 (5th Cir. 1991) ("Post-confirmation debtors are not entitled to the tolling provisions of section 108(a) . . . ."); <u>MHI Shipbuilding, LLC v. National Fire Ins. Co.</u>, 286 B.R. 16, 23 (D. Mass. 2002) (Young, C.J.) ("[C]ourts have unanimously held that Section 108 does not apply to mere debtors.").[4]

Where a debtor is concerned that a claim will be time-barred if the trustee does not pursue it, the debtor has a remedy in Bankruptcy Court.  The debtor may petition the Bankruptcy

---

[3] The "order for relief" referred to in § 108(a) is the filing of the bankruptcy petition. <u>MHI Shipbuilding, L.L.C. v. Nat'l Fire Ins. Co.</u>, 286 B.R. 16, 21 (D. Mass. 2002) (Young, C.J.) (stating that under § 108, "[i]n a Chapter 11 case, the order for relief is the 'commencement of a voluntary case,' which in turn is the filing with the bankruptcy court of the petition by the debtor."); <u>In re Healthco Int'l, Inc.</u>, 195 B.R. 971, 976, 988 (Bankr. D. Mass. 1996) (Queenan, Jr., J.) (same holding in Chapter 7 case).  Given that Villa DiMaio Family Pizza, Inc. filed for bankruptcy prior to the fire, § 108(a) did not extend the time for it to bring suit beyond the two-year period, and the trustees therefore obtained extensions of the limitation period from Charter Oak through April 11, 2003. (Reed Aff., 15-18.)  Anthony A. DiMaio filed a personal bankruptcy petition on December 18, 2001. (Reed Aff., ¶ 9.)  The trustee for Mr. DiMaio thus had until December 17, 2003 to bring suit under § 108(a), but never brought suit.

[4] Section 108 does apply to debtors-in-possession in Chapter 11 cases, who generally have the same powers as a trustee. <u>Id.</u> at 23.  However, this rule is not applicable here because during all relevant times the bankruptcies at issue in this case were Chapter 7 bankruptcies in which trustees had been appointed. (DiMaio Aff., ¶¶ 8, 9, 14.)

Court under Fed. R. Bankr. P. 6007 to order the trustee either to bring suit or abandon the claim in time for the debtor to do so. Polis v. Getaways, Inc., No. 98 C 1808, 2001 U.S. Dist. LEXIS 2021, at *7 (N.D. Ill. Feb. 26, 2001). Where the trustee elects not to pursue the claim and the debtor "opt[s] not to avail herself of these available remedies," the debtor "is bound by her own inaction and [the] court cannot now afford [the debtor] any relief." Id. (dismissing complaint improperly brought by debtor before the bankruptcy concluded for lack of standing, where new complaint would be time-barred). Here, as in Polis, Plaintiffs never petitioned the Bankruptcy Court for an order requiring the trustees to either bring suit or abandon the claim before the limitations period for Plaintiffs to bring suit expired. Plaintiffs slept on those rights.

**The "Enjoined Or Abated" Clause In M.G.L. c. 175, § 99 Is Inapplicable.** Plaintiffs contend that the "enjoined or abated" clause in Massachusetts' standard fire insurance policy extends the suit limitation period as a result of a bankruptcy where the Bankruptcy Code does not do so. That is not the case. M.G.L. ch. 175, § 99 extends the limitations period only where "suit or action upon this policy is enjoined or abated," neither of which occurred.[5] The bankruptcies did not "enjoin" suit or action on the Policy; they merely changed the parties who could bring suit from Plaintiffs themselves to the representatives of their bankruptcy estates.

The "enjoined or abated" clause was enacted in 1916. See General Acts of 1916, ch. 150 (attached as Exhibit 1 hereto). The legislative history demonstrates that the clause was intended to remedy a particular procedural problem identified by the Supreme Judicial Court where an

---

[5] Given that Plaintiffs do not argue that suit or action on the policy was "abated," Charter Oak will not address the concept of abatement in any detail. "Abatement" is an old term that in this context refers to the circumstance in which a lawsuit that has been filed was defeated on technical grounds unrelated to its merits, and typically can be re-filed. See, e.g., Woods v. Houghton, 67 Mass. 580, 583 (1854) ("[T]he bringing of the action in the wrong county might have been pleaded in abatement, and the writ been technically abated.").

award by referees was determined to be invalid after the two-year limitations period had run.[6] The amendment of the standard fire insurance policy for the purpose of adding the "enjoined or abated" clause was proposed by the Insurance Commissioner in a report to both houses of the General Court dated January 4, 1916. That report cites a Supreme Judicial Court decision as the basis for proposing the amendment:

> It may well be concluded that the standard form of fire insurance policy requires amendment in at least one other respect. It provides that no suit or action shall be begun to recover for a loss under the contract unless it is commenced within two years from the time the loss occurred. <u>It is possible to so consume time in litigation on questions preliminary to bringing an action for recovery for a loss that there would be no opportunity to bring the suit within the specified two years</u>. This unjust feature of the contract was alluded to in an opinion by Mr. Justice Loring in a recent case, *Hanley v. AEtna Insurance Company*, 215 Mass. 425, in the following language, which indicates clearly his belief that the contract should in this respect be reformed: "There is one other matter which we think should not be passed by, if for no other reason because by our silence we might be taken to have approved the action taken by agreement in the Superior Court. By the terms of the report if the award was invalid judgment was to be entered for the defendant. The fire here in question happened on Sept. 11 and 12, 1909. The trial took place Dec. 11, 1911. <u>By force of the clause in the policy providing that no suit or action for any claim by virtue of the policy shall be sustained unless begun within two years from the time the loss occurred, no action other than the one now before us can ever be brought on this policy. If the course sanctioned by the Superior Court is right, an insurance company can lie by until it is too late for a new action to be brought and then for the first time assert that an award is invalid, and if invalid, that it is entitled to judgment</u>."

Mass. H. Rep. No. 23 (Jan. 1916) (attached as <u>Exhibit 2</u> hereto) (emphasis added). As the Insurance Commissioner's report clearly demonstrates, the purpose of the "enjoined or abated" clause was to permit a second suit where an action is brought to enforce an award of referees and the award is determined to be invalid or the suit otherwise fails on technical grounds before the merits are reached. The SJC had noted in the decision that spawned the "enjoined or abated"

---

[6] The plain meaning of the "enjoined or abated" clause demonstrates its inapplicability here. However, if this Court determines that "the statutory language 'does not provide a definite answer to the question, it is appropriate to consult other sources to obtain a resolution, including the relevant legislative history, insofar as it sheds light on the Legislature's purpose in enacting the section." <u>In re Liquidation of American Mut. Liability Ins. Co.</u>, 440 Mass. 796, 802 (2004).

clause that "[i]t has been held in other jurisdictions that in case an award turns out to be invalid without fault on the part of the insured, a new appraisement should be made, or if that is refused, an action can be brought on the policy, in which the damages can be proved without resort to referees." Hanley v. Aetna Ins. Co., 215 Mass. 425, 431 (1913). The "enjoined or abated" clause was intended to bring Massachusetts in line with other jurisdictions in this regard, precluding insurers, after being sued, from using procedural gamesmanship (in the days prior to the advent of notice pleading) to obtain dismissal on technical grounds in a manner that would result in a new suit being time-barred.[7] The "enjoined or abated" clause has nothing to do with the effect of an insured's bankruptcy on the limitations period, which is governed by federal bankruptcy law.

### 2. M.G.L. ch. 231, § 140B Is Not Applicable

Plaintiffs also argue that the limitations period was extended by operation of M.G.L. ch. 231, § 140B when Charter Oak issued a check in the amount of $20,000 made jointly payable to Villa Dimaio Restaurant and the Town of Whately (for demolition and debris removal costs). Plaintiffs contend that the fact that Charter Oak did not inform them of the Policy's suit limitation period when this payment was issued has the effect of extending the limitations period. (Opp. at 5-7; DiMaio Aff., Ex. 2.)

Section 140B provides, in full, as follows:

> Any person against whom a claim or suit for damages on account of bodily injury, property damage, or death is made, or if such person is insured against loss by reason of his liability to pay such damages the insurer of such person may advance money to, or pay bills incurred by or on behalf of, such claimant, or plaintiff, as the case may be, without affecting the question of liability for such damages, and evidence of such payments shall not be admissible at the trial of such suit on the issue of liability or to mitigate damages; but if, in such case, there shall be a judgment in favor of the plaintiff for money damages, the presiding judge of the court in which the judgment is entered

---

[7] M.G.L. c. 175, § 187A, cited by Plaintiffs and enacted in 1922, extends this principle to insurance policies other than standard fire insurance policies.

> shall, upon motion of the defendant, credit upon such judgment the amount of such payments.
>
> Any such insurer who makes an advance payment under this section shall at the time of making such payment, by notice in writing, inform the claimant of the statute of limitations applicable to his claim and the time within which an action is required to be commenced to enforce such claim in a court of competent jurisdiction.
>
> The cause of action of any claimant who receives an advance payment under this section but who is not given the written notice required hereunder shall accrue on the date such written notice is actually given and not on the date the injury or damage was sustained.

M.G.L. ch. 231, § 140B.

A plain reading of the statute demonstrates that it is not applicable here. Section 140B describes three different types of actors: (1) the "person" against whom a claim is made; (2) the "insurer of such person"; and (3) the "claimant, or plaintiff" asserting the claim against the "person." Plaintiffs suggest two possible applications of § 140B in this case:

| **Actors** | **Configuration No. 1** | **Configuration No. 2** |
|---|---|---|
| "<u>person</u> against whom a claim or suit for damages on account of bodily injury, property damage, or death is made" | Anthony A. DiMaio and DiMaio Family Pizza & Lunchonette, Inc. ("DiMaio") | Charter Oak |
| "<u>insurer</u> of such person" against whom a claim is made or suit filed | Charter Oak | <u>Not Applicable</u> -- There is no "insurer" of Charter Oak. |
| "<u>claimant</u>, or plaintiff" making the claim against, or suing, the "person" | Town of Whately | DiMaio |

In Configuration No. 1, Charter Oak as the "insurer" would be required to give notice to the Town of Whately as the "claimant" of the statute of limitations. Section 140B provides that "[a]ny such insurer who makes an advance payment under this section shall at the time of making such payment, by notice in writing, inform the <u>claimant</u> of the statute of limitations

7

applicable to his claim." M.G.L. c. 231, § 140B (emphasis added). There is no requirement that the insurer inform the "person" (DiMaio) of the statute of limitations. The Town of Whately as the "claimant" could potentially benefit from the statute by receiving an extension of the limitations period. Id. ("The cause of action of any claimant who receives an advance payment under this section but who is not given the written notice required hereunder shall accrue on the date such written notice is actually given and not on the date the injury or damage was sustained.") (emphasis added). However, DiMaio as the "person" cannot benefit from § 140B -- the statute of limitations is not extended for the "person" against whom the claim is made. The limitations period is only extended for the "claimant" (Town of Whately).[8]

In Configuration No. 2, Charter Oak cannot be both the "person against whom a claim or suit for damages on account of . . . property damage . . . is made" as well as "the insurer of such person." Charter Oak is not the insurer of itself. The statute cannot be read as Plaintiffs suggest. It applies only to insurance for third-party claims made against an insured, not to first-party claims made by an insured against its own insurer.

The scope of § 140B is confirmed by its companion statute, § 140C, which was originally enacted together with § 140B as part of St. 1967, ch. 259. Section 140C is entitled "Settlement or Partial Payment Under Liability Insurance Policy as Admission of Liability" and provides that "No settlement or partial payment made under a liability insurance policy of a claim against any person insured thereunder shall be construed as an admission of liability by such person, with respect to any claim arising from the same event." M.G.L. c. 231, § 140C (emphasis added). When §§ 140B and 140C are read together, as they were enacted, it is clear that they apply to

---

[8] The Town of Whately was paid in full on its claim for demolition and debris removal costs. The cost of the demolition and debris removal was $16,250.00 and Charter Oak paid $20,000. The remaining amount (less the cost of the $25 permit) was applied toward a tax lien. (See Letter from L. Sibley to D. Reed dated Apr. 8, 2002 (DiMaio Aff. Ex. 2).)

third-party insurance (providing defense and indemnity coverage for claims made by third-parties against an insured), not first-party insurance (covering losses suffered by an insured).  In fact, the Journal of the Massachusetts Senate describes the bill which became §§ 140B and 140C as "<u>Liability insurance</u>, -- certain claims not admissible at trials." (Journal of the Senate, May 1, 1967, at 1012 (attached as <u>Exhibit 3</u> hereto, along with Senate Bill No. 1156 (1967)) (emphasis added).)

The fact that § 140B concerns third-party liability insurance is also confirmed by its history in Massachusetts caselaw.  Every single Massachusetts case that has cited § 140B since its enactment in 1967 has done so in a third-party liability insurance case.  <u>Trinity Church v. John Hancock Mut. Life Ins. Co.</u>, 399 Mass. 43, 55 (1987); <u>Allstate Ins. Co. v. Reynolds</u>, 43 Mass. App. Ct. 927, 928-29 (1997) (applying § 140B where an advance payment was made by an insurer to a third party on a claim made by the third party against the insured); <u>Urico v. Parnell Oil Co.</u>, 708 F.2d 852, 854 n.1 (1st Cir. 1983); <u>Gendron v. Rhodes</u>, 15 Mass. L. Rptr. 512 (Mass. Super. Ct. Oct. 31, 2002).  Over 37 years, § 140B has <u>never</u> been cited in a first-party property insurance case.

### 3.     **The Chapter 93A Claim Fails Because Denial Of Coverage Based On The Limitations Period Was Proper.**

While Plaintiffs are correct that a four-year statute of limitations applies to their ch. 93A claim premised on violations of ch. 176D,[9] they fail to address Charter Oak's argument that, as a matter of law, "[w]here as here, the insurer properly denied coverage, there can be no violation of chapter 176D."  <u>Brazas Sporting Arms, Inc. v. American Empire Surplus Lines Ins. Co.</u>, 220

---

[9] It is worth noting that Plaintiffs' claim is made under § 11 of ch. 93A (applicable to business entities), not § 9 (applicable to consumers).  "[I]nsurers' violations of certain provisions of G.L. c. 176D, § 3(9) [are] of significance only to the extent that the alleged wrongful conduct was a violation of G.L. ch. 93A, § 2 ('unfair or deceptive acts or practices')" because "§ 11 does not grant an independent right to recover for violations of G.L. c. 176D, § 3(9)."  <u>Polaroid Corp. v. Travelers Indem. Co.</u>, 414 Mass. 747, 754 (1993).

9

F.3d 1, 10 (1st Cir. 2000); see also Spurlin v. Merchants Ins. Co., 866 F. Supp. 57, 62 (D. Mass. 1994) (Ponsor, J.), aff'd, 57 F.3d 9 (1st Cir. 1995) ("Where an insurer's denial of coverage is correct there can be no violation of Mass. Gen. L. ch. 93A or ch. 176D."); Transamerica Ins. Co. v. KMS Patriots, 52 Mass. App. Ct. 189, 197 (2001) ("When coverage has been correctly denied, as in this case, no violation of the Massachusetts statutes proscribing unfair or deceptive trade practices may be found.").

Here, Charter Oak's denial of coverage to Plaintiffs based on the Policy's suit limitation period was legally correct.[10] Charter Oak is therefore entitled to summary judgment on the ch. 93A claim.[11]

## CONCLUSION

For all of the foregoing reasons, in addition to those stated in Charter Oak's opening memorandum of law, Charter Oak's motion for summary judgment should be granted.

---

[10] At the very least, Charter Oak's position that the claim is time-barred is based on a plausible, good faith interpretation of the Policy. An insurer is "entitled to decline coverage where there was a reasonably debatable question of policy interpretation." Rischitelli v. Safety Ins. Co., 423 Mass. 703, 704 (1996) (summarily affirming summary judgment for insurer on ch. 93A/ch. 176D claim where court determined there was no coverage). See also Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co., 406 Mass. 7, 15 (1989) (affirming summary judgment for insurer on ch. 93A claim where insurer's interpretation of coverage was incorrect, holding that "[i]n good faith, [the insurer] relied upon a plausible, although ultimately incorrect, interpretation of its policy" and that "[t]here is nothing immoral, unethical or oppressive in such an action").

[11] Plaintiffs do not even attempt to refute Charter Oak's demonstration that Count III (estoppel), Count IV (waiver) and Count V (breach of implied covenant of good faith and fair dealing) also fail as a matter of law. (See Opening Brief, at 11-13; Opposition Brief, at 1 et seq.)

Dated: August 27, 2004　　　　　　　　DEFENDANT,
　　　　　　　　　　　　　　　　　　THE CHARTER OAK FIRE INSURANCE
　　　　　　　　　　　　　　　　　　COMPANY


　　　　　　　　　　　　　　　　　　By: s/Wystan M. Ackerman_____
　　　　　　　　　　　　　　　　　　　　Gerald P. Dwyer, Jr. , BBO# 631475
　　　　　　　　　　　　　　　　　　　　Wystan M. Ackerman, BBO #651086
　　　　　　　　　　　　　　　　　　　　ROBINSON & COLE LLP
　　　　　　　　　　　　　　　　　　　　280 Trumbull Street
　　　　　　　　　　　　　　　　　　　　Hartford, CT 06103
　　　　　　　　　　　　　　　　　　　　Tel.: (860) 275-8200
　　　　　　　　　　　　　　　　　　　　Fax: (860) 275-8299
　　　　　　　　　　　　　　　　　　　　E-mail: gdwyer@rc.com
　　　　　　　　　　　　　　　　　　　　E-mail: wackerman@rc.com