UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DIMAIO FAMILY PIZZA & )
LUNCHEONETTE, INC. and )
ANTHONY A. DIMAIO, )
              Plaintiffs )
)
)
    v. )    Civil Action No. 04-30046-KPN
)
THE CHARTER OAK FIRE )
INSURANCE COMPANY, )
              Defendant )

MEMORANDUM AND ORDER WITH REGARD TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (Document No. 14)
December 7, 2004

NEIMAN, U.S.M.J.

The Charter Oak Fire Insurance Company ("Charter Oak"), defendant in this matter, has filed a motion for summary judgment in its contract dispute with Dimaio Family Pizza & Luncheonette, Inc. and Anthony Dimaio (together "Plaintiffs"). The parties have consented to this court's jurisdiction pursuant to 28 U.S.C. § 636(c). For the reasons described below, Charter Oak's motion will be granted in all respects but one, Plaintiffs' claim under Mass. Gen. L. chs. 93A and 176D.

I. BACKGROUND

On December 18, 2000, the Villa Dimaio Restaurant in Whately, Massachusetts, burned down. Plaintiffs, it appears, were insured by Charter Oak for property losses

due to fire.[1]  Prior to the fire, Dimaio Family Pizza and Luncheonette, Inc. ("Dimaio Family Pizza"), the owner of the restaurant, filed for Chapter 11 bankruptcy.  Over one year after the fire, Anthony Dimaio ("Dimaio"), the treasurer and secretary of Dimaio Family Pizza, personally filed for Chapter 7 bankruptcy.  The Bankruptcy Court appointed separate trustees for Dimaio and Dimaio Family Pizza.

In the instant six-count lawsuit, Plaintiffs, their bankruptcy cases closed, allege breach of contract (Counts I and II) and breach of the implied covenant of good faith and fair dealing (Count V).  Plaintiffs also allege that Charter Oak should be estopped from denying that the loss is payable under the policy (Count III), waived its rights under the contract (Count IV), and is liable to Plaintiffs under Mass. Gen. L. ch. 93A, §§ 2 and 11 and ch. 176D, § 3, for unfair and deceptive trade practices (Count VI).  Presently before the court is Charter Oak's motion for summary judgment.  In essence, Charter Oak asserts that Plaintiffs are barred from any of the relief they seek because of their failure to timely comply with the suit limitation provision in the insurance policy.

## II. STANDARD OF REVIEW

When ruling on a motion for summary judgment, the court must construe the facts in a light most favorable to the nonmoving party.  *Benoit v. Tech. Mfg. Corp.*, 331 F.3d 166, 173 (1st Cir. 2003).  Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  For this purpose, an issue is "genuine" when the

---

[1] Although the named insured is "Villa Dimaio Restaurant," the parties have proceeded, for purposes here, as if Plaintiffs themselves were insured by Charter Oak.

2

evidence is such that a reasonable fact-finder could resolve the point in favor of the nonmoving party, and a fact is "material" when it might affect the outcome of the suit under the applicable law. *Morris v. Gov't Dev. Bank*, 27 F.3d 746, 748 (1st Cir. 1994). The nonmoving party bears the burden of placing at least one material fact into dispute after the moving party shows the absence of any disputed material fact. *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994) (discussing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

### III.  DISCUSSION

In its motion for summary judgment, Charter Oak asserts that, under the terms of its policy and as required by Mass. Gen. L. ch. 175, § 99, Plaintiffs had to commence any suit or action within two years of the loss. Plaintiffs, Charter Oak maintains, did not commence suit until February 12, 2004, over three years after the loss.

Plaintiffs concede that their suit was filed more than two years after the loss, but refute Charter Oak's motion on three grounds. First, Plaintiffs assert that, having filed for bankruptcy and having no standing to bring suit within two years of the loss, they fall within an exception to the limitations provision. Second, Plaintiffs argue that Charter Oak's failure to comply with yet another statute, Mass. Gen. L. ch. 231, § 140B, tolled the limitations period. Finally, Plaintiffs assert that, in any event, their unfair and deceptive practices claim under Mass. Gen. L. ch. 93A, §§ 2 and 11 and ch. 176D, § 3, is timely pursuant to ch. 260, § 5A. The court will address each argument in turn.

### A.

The insurance policy provision upon which all parties rely provides as follows:

> No suit or action against this company for the recovery of
> any claim by virtue of this policy shall be sustained in any
> court of law or equity this commonwealth unless commenced
> with two years from the time the loss occurred.
> . . . If a suit or action upon this policy is enjoined or abated,
> suit or action may be commenced at any time within one
> year after the dissolution of such injunction, or the
> abatement of such suit or action, to the same extent as
> would be possible if there was no limitation of time provided
> herein for the bringing of such suit or action.

(Charter Oak's Brief at 3). This provision tracks Mass. Gen. L. ch. 175, § 99.[2] In essence, Plaintiffs claim that their individual bankruptcy petitions had "enjoined" their claims and thereby extended the limitations period. The court is not convinced.

As an initial matter, however, the court rejects Charter Oak's contention that, pursuant to the contractual and statutory provision at issue, Plaintiffs' present lawsuit must have commenced prior to the bankruptcy filings in order for Plaintiffs to thereafter be eligible for an extension of the limitations period. If no suit had commenced, Charter Oak argues, there was nothing to enjoin or abate.

The court reads the provision differently than Charter Oaks. *See Coll v. PB*

---

[2] The pertinent part of chapter 175, § 99 reads as follows:

> No suit or action against this company for the recovery of
> any claim by virtue of this policy shall be sustained in any
> court of law or equity in this commonwealth unless
> commenced within two years from the time the loss occurred
> . . . . If suit or action upon this policy is enjoined or abated,
> suit or action may be commenced at any time within one
> year after the dissolution of such injunction, or the
> abatement of such suit or action, to the same extent as
> would be possible if there was no limitation of time provided
> herein for the bringing of such suit or action.

*Diagnostic Sys.*, 50 F.3d 1115, 1122-23 (1st Cir. 1995) (under Massachusetts law, contract interpretation is a question of law for the court unless the contract is ambiguous). In applicable part, the provision states that "If a suit or action upon this policy is enjoined or abated, suit or action may be *commenced* at any time within one year *after* the dissolution of such injunction, or the abatement of such suit or action." The court takes the plain meaning of the term "commenced" to mean "begin" or "initiate." Thus, the language of the exception foresees that a suit or action may be initiated *after* an injunction dissolves or when an action is *no longer* abated, i.e., no longer suspended. Reading the provision, and the authorizing statute, in the manner Charter Oak suggests would leave Plaintiffs without any exception at all. *See Great Southwest Fire Ins. Co. v. Hercules Building & Wrecking Co.*, 619 N.E.2d 353, 356 (Mass. App. Ct. 1993) (holding that insurer relying on "separate and distinct" exclusion has the burden of proving that it applies).

Plaintiffs, however, do not fare as well with respect to the core of their remaining argument. Even assuming that the provision allows additional time for the commencement of lawsuits that have been "enjoined" or "abated," Plaintiffs had neither been "enjoined" nor "abated" from commencing suit against Charter Oak in the manner contemplated.

In reaching this conclusion, the court must necessarily distinguish Plaintiffs' "abatement" argument from the automatic "stay" which takes effect upon the filing of a bankruptcy petition. *See Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 975 (1st Cir. 1997); *Sunshine Dev. v. FDIC*, 33 F.3d 106, 113-14 (1st Cir. 1994). As

the parties are well aware, section 362(a)(1) of the Bankruptcy Code provides that a petition in bankruptcy stays the commencement or continuation of all nonbankruptcy judicial proceedings "against the debtor." *See id.; Jamo v. Katahdin Fed. Credit Union (In re Jamo)*, 283 F.3d 392, 398 (1st Cir. 2002). The stay, of course, did not itself prevent Plaintiffs, as debtors, from commencing suit *against* others, and Plaintiffs do not rely on its protections. Instead, Plaintiffs assert that they had been "enjoined" from bringing suit against Charter Oak because their rights had been transferred to their respective trustees in bankruptcy who alone could initiate suits.

The court does not entirely agree with Plaintiff's analysis. In essence, the court finds that, given the facts of this case, the "enjoined or abated" language in the statute does not apply in the manner suggested by Plaintiffs. Moreover, it must be remembered that Dimaio himself could have commenced suit against Charter Oak at any time after the fire and before he filed for bankruptcy.[3]

To be sure, when both Dimaio and the Dimaio Family Pizza separately filed for bankruptcy, "all legal or equitable interests . . . in property as of the commencement of the case" became the property of the respective bankruptcy estates. *See* 11 U.S.C. § 541(a)(1). Thus, any cause of action could be pursued by a representative of the estate, i.e., the trustee or, in a Chapter 11 case where a trustee has not been

---

[3] Although the fire occurred after Dimaio Family Pizza filed for bankruptcy, making the insurance claim a post-petition right not necessarily transferable to the trustee, the parties have not questioned the transfer of that property right to the trustee. As described, Dimaio's personal petition for bankruptcy was filed after the fire and, thus, the claim against Charter Oak automatically became part of his bankruptcy estate. *See* 11 U.S.C. § 541(a).

appointed, by the debtor-in-possession. *See* 11 U.S.C. § 323(b). *See also DiStefano v. Stern (In re J.F.D. Enters., Inc.),* 223 B.R. 610, 621 (Bankr. D. Mass. 1998), *aff'd*, 236 B.R. 112 (Bankr. D. Mass. 1999), *aff'd*, 215 F.3d 1312 (1st Cir. 2000). Here, the bankruptcy trustees were the representatives of the estates and, as such, had exclusive standing to assert any state law claims against Charter Oak. *See* 11 U.S.C. § 323(b). *See also Erricola v. Gaudette (In re Gaudette)*, 241 B.R. 491, 498 (Bankr. D.N.H. 1999) ("More specifically stated, if the cause of action belongs to the estate, the trustee has exclusive standing to assert it.") *Regan v. Vinick & Young (In re Rare Coin Galleries of Am., Inc.)*, 862 F.2d 896, 901 (1st Cir. 1988) ("The trustee steps into the shoes of the debtor for the purpose of asserting or maintaining the debtor's causes of action, which became property of the estate.") (citation omitted). But the transfer of the "property," i.e., the claim against Charter Oak, from Plaintiffs to the trustees did not leave Plaintiffs without rights. Thus, the two entities in each bankruptcy, i.e., the trustee and the debtor, "exist[ed] side-by-side, having different powers and rights and, as importantly, being separate and distinct entitites and therefore having different interests." *Gray v. Exec. Risk Indem., Inc. (In re Molten Metal Tech., Inc.)*, 271 B.R. 711, 729 (Bankr. D. Mass. 2002). Thus, Plaintiffs, as debtors, could have petitioned the Bankruptcy Court to force their respective trustees to either initiate suit against Charter Oak or abandon their interests in the claim against Charter Oak. *See* Fed. R. Bankr. P. 6007. Plaintiffs, who were represented by counsel in the bankruptcy proceedings, failed to do so.

An instructive case on point is *Polis v. Getaways*, 2001 WL 185481 (N.D. Ill.

Feb. 26, 2001). There, the plaintiff, who was in bankruptcy, attempted to file an independent action against a promoter of travel packages prior to the expiration of the statute of limitations on her claim. The plaintiff argued that the court should allow her to file suit because the statute of limitations was about to expire on the claim. At the promoter's request, however, the complaint was dismissed for lack of subject matter jurisdiction. The court found that the trustee in bankruptcy, not the plaintiff, had standing to bring suit. If the plaintiff "believed that the trustee was not properly administering the claim as an asset of the estate," the court explained, she "could have petitioned the bankruptcy court to order the trustee to file suit or abandon the claim." *Id.* at *2 (citing 11 U.S.C. §§ 105(a), 554(b); Bankruptcy Rule 6007). "Upon the trustee's abandonment of the claim", the court continued, the plaintiff "would have standing to file suit." *Id.* (citing *Koch Refining v. Farmers Union Cent. Exchange, Inc.*, 831 F.2d 1339, 1347 n.9 (7th Cir. 1987)). Since the plaintiff never availed herself of this remedy under the law, she was "bound by her own inaction" and could not be afforded any relief. *Id.*

Here, too, Plaintiffs had at all times available the means for asserting their claim against Charter Oak either through the trustees in bankruptcy or the Bankruptcy Court itself if the trustees failed to properly pursue the claim. Thus, Plaintiffs were not "enjoined" or "abated," as those terms are used in the policy, from pursuing their claimed interests in a timely matter.

In this regard, there is no doubt that Plaintiffs were aware of the time constraints applicable to their claim. For one thing, both trustees in bankruptcy sought and

obtained approval from the Bankruptcy Court to retain legal counsel to commence legal actions, if necessary, to protect the claims of the estates.  Moreover, with the understanding of Plaintiffs' attorneys, the trustees had twice asked Charter Oak for additional time within which to bring suit.  Charter Oak granted those requests by extending the filing deadline to February 2, 2003, and then again to April 11, 2003.  No further extensions were sought.  Thus, at a minimum, Plaintiffs had an additional four months beyond the two year deadline within which they could have petitioned the Bankruptcy Court to force the trustees either to initiate suit against Charter Oak or abandon the claim so that they could pursue the claim on their own.[4]  Indeed, Dimaio Family Pizza had some time, albeit only nine days, to file suit on its own behalf after the Bankruptcy Court on April 2, 2003, ordered the trustee to abandon any interest in the insurance claim.  A similar abandonment did not occur in DiMaio's bankruptcy until June 20, 2003.

B.

Plaintiffs' second, alternative argument -- that Charter Oak's failure to comply with Mass. Gen. L. ch. 231, § 140B tolled the statute of limitations -- is also unconvincing.  In applicable part, section 140B provides that "the cause of action of any claimant who receives an advance payment under this section but who is not given the written notice required hereunder shall accrue on the date such written notice is

---

[4] It is not clear from the record why the trustees did not commence suit.  Charter Oak, however, suggests that the trustees' decision is consistent with its position that its payments to Plaintiffs' creditors of over $335,000 for losses from the fire fully discharged its liability under the policy.

9

actually given and not on the date the injury or damage was sustained."[5]  Here, Plaintiffs contend, they did not receive notice of the statute of limitations at the time Charter Oak made a partial payment to the Town of Whately for the removal and disposal of the restaurant's building remnants and debris.

As Charter Oak argues, however, the notice requirement mentioned in the statute is intended for third-party claimants, here the Town of Whately, not the

---

[5]  In full, section 140B reads as follows:

> Any person against whom a claim or suit for damages on account of bodily injury, property damage, or death is made, or if such person is insured against loss by reason of his liability to pay such damages the insurer of such person may advance money to, or pay bills incurred by or on behalf of, such claimant, or plaintiff, as the case may be, without affecting the question of liability for such damages, and evidence of such payments shall not be admissible at the trial of such suit on the issue of liability or to mitigate damages; but if, in such case, there shall be a judgment in favor of the plaintiff for money damages, the presiding judge of the court in which the judgment is entered shall, upon motion of the defendant, credit upon such judgment the amount of such payments.
>
> Any such insurer who makes an advance payment under this section shall at the time of making such payment, by notice in writing, inform the claimant of the statute of limitations applicable to his claim and the time within which an action is required to be commenced to enforce such claim in a court of competent jurisdiction.
>
> The cause of action of any claimant who receives an advance payment under this section but who is not given the written notice required hereunder shall accrue on the date such written notice is actually given and not on the date the injury or damage was sustained.

insurance policy holders, here Plaintiffs. Indeed, as Charter Oak points out, it appears that every Massachusetts case that has cited § 140B since its enactment in 1967 has done so in the third-party context.

Nonetheless, Plaintiffs counter that the statute does not preclude them from being both persons "insured against loss" and "claimants" entitled to the protection of the statute. "Relatedly," Plaintiffs continue, "the statute is not worded in such a way that would preclude Charter Oak from being both a person against whom a claim is made and an insurer required to give the statutory notice." (Plaintiffs' Brief at 7.)

The court agrees with Charter Oak. In the one case Plaintiffs cite in support of their argument, *Allstate Ins. Co. v. Reynolds*, 685 N.E.2d 1210 (Mass. App. Ct. 1997), the "claimant" was in fact a third party claimant, i.e., a passenger in the insured's vehicle who filed suit against the insured for injuries sustained in an automobile accident. That is the very kind of third party claimant which, Charter Oak maintains, is protected by the statute. In line with *Reynolds*, the court finds as follows: the "claimant" in this case is the Town of Whately; the "person[s] against whom a claim or suit for damages on account of bodily injury, property damage, or death is made" are Plaintiffs; and the "insurer" is Charter Oak. Plaintiff, as a result, cannot be granted the additional time allowed by the statute and afforded claimants only. The court, therefore, declines to extend the statute's protection in the manner Plaintiffs suggest.

To be sure, insurance claims are often very complex and involve a multitude of parties. It is fair, therefore, that each party should be given notice of the statute of limitations within which to enforce its rights. But requiring such notice to the insured

every time an insurance company renders a payment to a third party, as Plaintiffs would have it, would not only be burdensome but, given that the insured is provided notice of the statute of limitations in the insurance contract itself, nonsensical. Accordingly, the court will enter summary judgment in Charter Oak's favor with respect to Counts I through V.[6]

B.

Plaintiffs fare better with regard to their last argument, namely, that their claim under Mass. Gen. L. ch. 93A, §§ 2 and 11 and ch. 176D, § 3 in Count VI should survive Charter Oak's motion for summary judgment.  Pursuant to this court's scheduling order of April 7, 2005, discovery proceeded only with regard to the statute of limitations issue. Accordingly, Plaintiffs' claim in Count VI, for which there is a four year statute of limitations, is not presently before the court.

IV. CONCLUSION

For the reasons stated, Charter Oak's motion for summary judgment is ALLOWED with regard to Counts I through V, but DENIED with regard to Count VI. The clerk's office shall schedule a conference so that the remaining discovery events may be set with respect to Count VI.

IT IS SO ORDERED.

---

[6] Plaintiffs concede that if the suit limitations provision was construed in favor of Charter Oak, as it has been, then their breach of contract, waiver and estoppel claims would necessarily fail.  The same is true as to the implied covenant of good faith and fair dealing claim.  See Chokel v. Genzyme Corp., 17 Mass. L. Rep. 83, 2003 WL 23016549, at *4 (Mass. Super. Ct. Nov. 12, 2003) ("Without a breach of the contract, there can be no claim for a breach of an implied covenant of good faith and fair dealing".) (citing AccuSoft Corp. v. Palo, 237 F.3d 31 (1st Cir. 2001)).

DATED: December 7, 2004

                                           /s/ Kenneth P. Neiman
                                           KENNETH P. NEIMAN
                                           U.S. Magistrate Judge